On the Merits.
Pretermitting the question of the animus of the defendant in the matter of his alleged misconduct, the facts leading to the institution of this proceeding, as disclosed by the evidence, are, in the main, as stated in the foregoing opinion upon the exceptions. There are, however, certain discrepancies between the allegata of the petition and the probata which throw additional light upon the situation and render it advisable that the case should be restated.
Clora Little is shown to be a negro woman, past middle age and of about the average intelligence of her class, who was the natural mother of Ida Dardenne, and is the aunt of Bertha Ellis. The mother and daughter appear to have lived together and to have worked with the common purpose of securing a home for themselves, and, with the co-operation of Joseph Oryer, a negro laborer, who subsequently married the daughter, there was purchased in his name a lot of ground in St. Helena parish, and another on Burdette street, in New Orleans, upon w'hich latter there was erected a double tenement house, in one of the tenements of which they all lived, together with Bertha Ellis, a minor, whose mother resided in the country. The property was mortgaged for $850, and the debt was past due; and, in that situation, on February 24, 1911, Oryer executed a dation en paiement to his then wife, Ida Dardenne, which reads, in part, as follows:
“Before me, * * * notary, * * * appeared Mr. Joseph Oryer * * * and * * * his wife, * * * and * * * declared that, at the time they acquired the properties, *588 * * * they were not married, but the said Mrs. Oryer had contributed one-half towards the purchase * * * and the erection of the improvements placed thereon : Now, therefore, the said Cryer, for the purpose of satisfying the claims of his said wife against him for the amount she had thus contributed, * * * does * * * make a dation en paiement * * * unto his wife, who accepts, * * * of an undivided half interest in and to the property,” etc.
Three months later (May 24, 1911) Ida (Dardenne) Cryer died, leaving a nuncupative will, by public act, whereby she bequeathed her entire estate, in equal proportions, to Clora Little, Bertha Ellis, and Frankie Bryant, Jr., and named Bertha Ellis as her executrix; and a few days later Clora Little learned that the holder of the mortgage on the Burdette street property was about to foreclose the same. The testimony does not explain why that property had been acquired in the name of Cryer alone, nor why the interest of Clora Little had not been recognized, but it leaves no room for doubt that she had added her earnings to the contributions of her daughter, and qf Cryer, for the making up of the amount which had been expended in its acquisition and improvement, in the expectation of thereby securing for herself a home in her approaching old age; her belief apparently being that she had acquired a half interest in the property by virtue of her contributions, and that her title had been enlarged by the inheritance which had devolved upon her.as the heir of her daughter. When, therefore, she was advised of the impending seizure and sale of the property, she became desperately concerned about it, and, in the latter part of May, called upon Harold A. Moise, a member of the bar, to whom she had been recommended, laid the matter before him, and engaged his services to look after her interest; but, as she did not herself understand the situation, we infer that she did not, at that time, make it clear to him. A few days afterwards, however (on June 6th), she again called upon Mr. Moise, taking with her a copy of the will of Ida Cryer, and accompanied by Bertha Ellis, and they together executed an instrument authorizing him to institute proceedings to probate the will and agreeing to pay him a certain percentage “of the inventory value of the property of the deceased” for the services to be rendered; and the will was presented for probate on June 12th, by means of a petition in the name of Bertha Ellis, as executrix, upon which the usual orders were made. On June 17th following the mortgage creditor obtained an order for the seizure and sale of the Burdette street property, and Clora Little advised Mr. Moise of that fact, and called upon him repeatedly, urging that he do something to prevent the sale, or that would enable her to maintain her hold upon the property. She testifies that he told her that the property would have to be sold, and that Bertha Ellis, the executrix, had said that she desired that it should be sold; but that Bertha Ellis went with her to see Mr. Moise, and told him she did not so desire; that she (Clora Little) then concluded that Mr. Moise had abandoned her, and it appears that she made an arrangement with one Bernard Zahn, as the result of which, when the day of sale (July 27, 1911) came around, the property was adjudicated to “Clora Little, for account of Bernard Zahn,” for the sum of $2,260, to which were added certain interest and rents, making a total, for which the sheriff gives an account, of $2,290.15, of and from which he received $1,979.08, and paid out, in satisfaction of the claim of the seizing creditor and for costs, charges, and paving liens, $1,546.83, leaving in his hands a balance of $432.25, and leaving in the hands of the purchaser the sum of $311.07 wherewith to satisfy a second mortgage which he had assumed. We infer that the arrangement *590 made with Zahn was that he was to furnish the money for the purchase of the property, and that Clora Little was to be allowed to redeem it, on such terms as were agreed on; and it appears from the evidence that, after the adjudication, she consulted E. P. Quinius, another attorney, and we find- in the record a note from him, of date September 28th, in which he says:
■“I have, so far, been unable to come to any terms with Mr.' Zalm in regard to the redemption of your property.”
It further appears that, finding that the title to the property had become vested in Zahn, and that Quinius could not accomplish what she wished to have done, she told her story to a friend, who recommended that she employ John W. Cary, the defendant now before the court, which she did; the situation at that time, so far as Mr. Moise was concerned, being as follows: After the filing of the petition for the confirmation of Bertha Ellis as executrix, Mr. Moise had -discovered that she was a minor, and he set about to have her emancipated, but, as her mother lived in the country, there was some delay in obtaining her consent. On September 6th, however, a petition for emancipation, signed by the petitioner and her counsel, and with the consent of the mother and an affidavit of Clora Little attached thereto, was filed, and the judgment of emancipation was rendered, and on the same day letters of executorship were issued to Bertha Ellis as prayed for in the petition originally filed. Thereafter, on September 11th, Mr. Moise had filed a rule, in the name of the executrix, setting forth that there was a balance of $432.25 in the hands of the sheriff, and requiring the sheriff to show cause why it should not be turned over to the executrix, to which rule was attached a note from Joseph Cryer saying:
“I have no objection to your paying- over to the executrix of the succession of Ida Dardenne Cryer the sum of $432, being the amount left after settlement of foreclosure. Asking you to take receipt for same. Respectfully,” etc.
The rule was accordingly made absolute, and the sheriff’s check for the amount in question, drawn to the order of his deputy, and by him indorsed, “Pay to the order of Bertha Ellis, testamentary executrix of succession of Ida Dardenne, wife of Joseph Cryer,” was delivered to the indorsee, by whom it was indorsed in blank, and delivered to Mr. Moise, who indorsed it in blank, and delivered it to C. C. Fredericks, who had acted as the notary of the succession, and who indorsed it “For deposit,” and deposited it to the credit of his individual account, for which it was duly collected.
When, therefore, the defendant was employed (and he appears to have been employed, as was Mr. Moise, to represent both Clora Little and her niece, Bertha Ellis), he found that, upon the face of the records, a balance of $432.25 from the sale of the Burdette street property had come into the hands of the sheriff, and that, with the consent of Joseph Cryer, the owner of record of an undivided half interest in the property, the sheriff had given his check for the amount to Bertha Ellis, executrix; but he appears to have been informed by her that she had turned the check over to Mr. Moise, and that thereafter Mr. Moise had declined to put her in possession of the proceeds. He thereupon (that is to say, on October 20th, up to which date no further steps appear to have been taken) filed a rule, in the name of Bertha Ellis, executrix, and in the proceeding bearing the title and number of the proceeding via executiva, alleging that the balance in question had gone into the hands of the sheriff; that the attorney of the executrix, Mr. Harold Moise, had collected the same, and refused to turn it over to her, notwithstanding amicable demand; and calling upon Mr. Moise to show cause why he should not be ordered so to do. Inasmuch, however, *592 as the sheriff’s cheek for the money had been given to the executrix, as we have stated, it seems to have been considered that the rule was filed in the wrong proceeding, and in the wrong division of the court, and it was accordingly dismissed. Thereafter (on October 31st) defendant filed two rules, the one, as counsel for “Bertha Ellis, testamentary executrix, with seisin of the estate of Ida Dardenne, deceased,” and the other as “counsel for the testamentary legatee and mother of the testatrix,” alleging in the one that Harold Moise, attorney at law, without the authority of the executrix, or of the court, had collected the balance in question, and “converted same to his own use,” and persisted in withholding the same, against the wishes of the executrix, and in the other “that this suit [referring to the opening of the succession] was filed and entered by attorney at law, Harold Moise, without the sanction or authority of the testamentary legatee and mother of the testator, and to their prejudice, and said attorney at law, Harold Moise,” still persists in his right to proceed further in the prosecution of this cause, to their hardship and unnecessary waste of money, against their will, * * * that the succession * * * owes no debts, only what have accrued since the death of the testatrix, and that they are quietly and peacefully in possession of their inheritance, and that they desire to accept the succession purely and simply, without the aid of attorney Harold Moise.
The prayer of the one rule was that defendant in rule be ordered to show cause why he should not pay over to the executrix the money collected from the sheriff “under false pretenses”; and in the other why “the petition [meaning the petition presenting the will for probate, etc.] herein filed by him * * * 'should not be dissolved and set aside, at the cost of said attorney at law,” etc.
In the meanwhile, on October 20th (the day the first rule was filed), Mr. Moise had written to Bertha Ellis, informing her that he desired to file an account in the succession, “and have the funds distributed according to law,” and requesting her to call upon him “at her earliest possible convenience”; and on October 31st (the day upon which the other rules were filed) he deposited the $432.25 in the registry of the court, and answered the rule taken in the name of the executrix, saying (inter alia):
“That, as attorney for the said Bertha Ellis, testamentary executrix, * * * and with the consent of Joseph Cryer, husband of the deceased, he did, under order of court, collect from the civil sheriff * * * the sum of $432.25, being the balance of the proceeds of sale in the case of Frank B. Twomey v. Joseph. Cryer, * * * and which amount was immediately turned over by him to Carl C. Fredericks, notary of this succession, the whole to-be held for the filing of an account and the adjustment of the community debts, to which the one-half of the said sum belonging to Joseph Cryer would have to contribute, and which he was willing to pay; that, notwithstanding repeated requests and demands, the said Bertha Ellis never called at this respondent’s office so that the account might be prepared and filed, and therefore this respondent returned the whole of the said money to the registry of this court, so that the same might be disposed of by the court,” etc.
He (Mr. Moise) also, and upon the same day, filed a rule, in his own name, alleging that he was unable to file an account because of the action of the executrix; that she had been advised by other counsel that she was not bound to pay the privileged debts of the succession; that she had given no bond; that there was no way by which the creditors could be protected, save by depositing the funds of the succession in court; that there were privileged debts (enumerating funeral and law charges and expenses of last illness, etc., amounting to, say, $388), and praying that the executrix be ordered to show cause why the creditors should not be paid from the said funds 'deposited by him.
Upon the trial in the district court of the *594 rules taken by the defendant herein, Bertha Ellis testified that she had never employed counsel “in this case” (referring to the succession proceeding); that she had never authorized any one to represent her in the collection of the check issued by the sheriff; that Mr. Moise had sent for her to sign (meaning to indorse) the check, and told her that he would give her the money on the fol-owing day, but that he had not done so, though she had called for it more than once; that she had had no negotiations with him to represent her, as attorney, and had only signed one paper “before I [she] was emancipated” ; that she signed that through her aunt; that it represented something in property, about property.” On her cross-examination,she admitted her signature to the petition for emancipation, and admitted that she came to court with Mr. Moise, but she denied that she, had employed him; said that she told him that she did not want to be emancipated, and that he told her that she had to be. Being shown the signature purporting to be hers, on the instrument authorizing Mr. Moise to institute proceedings to probate the last will of Ida Dardenne, etc., she denied it. Clora Little testified in the district court, as she did here, that she urged Mr. Moise to do something to help her save the Burdette street property, and that, when he told her that nothing could be done, she employed Mr. Cary. She also testified that Bertha Ellis had signed (with her) the paper which Bertha denied having signed. Mr. Cary testified that he called on Mr. Moise about the money which the latter had collected from the sheriff, and that 'Mr. Moise promised to give it to him, but failed to do so; that “he considered that he had converted it to his own use, because he changed its condition into cash, and held it over my [his] protest, and wouldn’t surrender it”; that he asked two or three times for the money before he filed the rule, and never could find out anything. Mr. Fredericks testified that he had been appointed as notary to take the inventory of the succession property; that Mr. Moise turned over to him, upon the day that he received it, the check issued by the sheriff for the $432.25; and that he deposited it on the same day. Mr. Grasser, the attorney who represented Joseph Cryer, was asked:
“Was Mr. Cryer willing that this money should go into the hands of Bertha Ellis, or for it to be left where it was?”
To which he replied:
“No, sir; it was turned over to Mr. Moise, and he was to file an account. There would be very little left after the payment of the debts.”
Upon the hearing in this court, Bertha Ellis testified that the statements made by her in the district court, to the effect that she had not employed Mr. Moise and had never authorized him to open the succession of Ida Dardenne, were made at the instance of the defendant herein, and were not true; that the signature which she denied in the district court was her signature; that she indorsed the sheriff’s check in order that Mr. Moise might get the proceeds; that she never employed Mr. Cary; that her aunt employed him; that she did not know what conversation took place between Mr. Cary and her aunt, but that her aunt was present when Mr. Cary told her what to say in court. Clora Little testified that Bertha Ellis had no conversation with Cary out of her presence, and that he had not, in her presence, told her what she should testify to in court; that it was she, not Bertha, who employed Mr. Moise; that Mr. Moise stated that, Bertha being a minor, he could not transact business with her. Mr. Moise testified that Clora Little requested him to represent her in the succession of her daughter; that he afterwards learned that she had a niece, Bertha Ellis, whom she brought to see him, bringing also a copy of her daughter’s will; and that they signed the *596 authorization, or contract of employment, of June 6, 1911; that he had the will probated, and afterwards, learned that Bertha was a minor; that he charged her and her aunt with misrepresenting the fact to him, and told them that a minor could not qualify as executrix, and that it would be necessary to have her emancipated; and that he had her emancipated, and thereupon obtained her letters. Referring to the balance that was in the hands of the sheriff, he says that he was told by the sheriff that it would be paid to no one without the consent of Joseph Cryer, the master of the community.
“Thereupon,” the testimony proceeds, “I went to see Mr. Jules A. Grasser, * * * who represented Joseph Cryer, and I told him that _we wanted to get rid of this succession, and wind it up, and asked would he not consent to have this fund turned over to us for the purpose of paying the privileged debts and charges. I told him that this girl was an irresponsible negress, and that she was without bond, and that, if I would assume the .responsibility of seeing that the privileged debts and charges were paid in that instance, would he consent to turn this fund over to me, which he did. I then drew up a motion * * * and attached * * * the consent of Joseph Cryer, which had been obtained from Mr. Grasser, and I then took this to get the approval of the attorney for the civil sheriff, Mr. W. O. Hart, and I then got the order of court, properly signed, to turn this money over to Bertha Ellis, testamentary executrix. * * * When I got possession of this check, which was made payable to Bertha Ellis, on my representation to Mr. Grasser, I considered myself as a surety, assuming the responsibility, and I was ready to file an account, provided I could get some insurance benefits, that they should go towards paying the funeral bills, and then we filed the account. I did not want the girl to keep this money, and I sent for her, and I told her the situation. I told her that the notary is an officer of the court, and that I would let him hold this fund as a stakeholder until we could file an account. She indorsed the check, and I turned it over to Mr. Carl C. Fredericks, asking him to hold this check for a few days until we could file an account. In the meantime the insurance payment was not completed, and on the funeral bill there was some little delay. There was a little delay in filing the account, but shortly after that— it must have been in the first part of October, I cannot recollect the dates — I received a visit from Mr. John W. Cary, who told me that he represented Clora Little. * * * I replied to him that I represented her on a contract. He said that the contract was no good; that she is a married woman. I said, ‘That is news to me, if she is a married woman. I said, ‘Anyhow, what is your mission?’ * * * He spoke about a proceeding he wanted to take, in behalf of Clora Little, against a man by the name of Zahn. * * * He also said that he wanted to go to Baton Rouge, and T want to get from you, out of Clora Little’s share, $10, under the marriage certificate.’ I said, ‘No,’ that this was a trust fund, and I could not pay him anything. I then left. He came to see me again after that, and he said to me, ‘Turn over a half of the amount to me,’ and that I could keep the other half. I smiled and said: T couldn’t do anything like that, but I will tell you what I will do; I will try and file the account, and let you file all of your rights, by way of opposition.’ He then left me, and finally I had a third visit from him, and he demanded the entire fund, stating that at this time he was representing Clora Little. He said that he represented Clora Little. * * * His rules taken show that they were taken in behalf of Clora Little, and there is also a rule offered on behalf of Clora Little and Bertha Ellis. He evidently took my disinclination to aid him for fear of him, and he said that he was going to make me turn over the entire amount. I told him that there were privileged creditors and charges to be paid, but he said that he was going to make me turn over the entire amount, and so I told him to pop his whip, and go ahead. He left my office. There was a rule taken against Bertha Ellis and myself in the foreclosure proceeding. That rule was taken in the wrong division of the court, division C, and it was dismissed. After the dismissal of the rule, I thought over the matter, and I saw him after that in the civil district court. * * * I told him not to take any more proceedings, that I would file this money the following day in the registry of the court; that was on Friday. After telling him that, Monday goes by, and on Tuesday, October 31st, I went down to court, with a check which I had received from Mr. Fredericks, cashed it, and deposited it in the registry of the court — $432.25. * * * I then ascertained — when I was do.wn at court, I was unaware of any proceedings being taken against me — I then ascertained that he had filed a rule, stating that I had collected this money under false pretenses, and that I had converted the money to my own use, and had embezzled it, and other things. Previously, before this, before October 31st, T had written to Bertha Ellis a letter, which is dated October 20th, asking her to come down so that we could file an account.”
Opinion.
[3, 4] We have heretofore had occasion to say that “defendant does not seem to understand the nature of this proceeding” (see supra), and we are confirmed in that opinion. *598 Being charged with professional misconduct, by reason mainly of certain pleadings filed by him in the succession of Ida Dardenne, in which, on behalf of his clients, he sought to obtain control of a certain balance remaining in the hands of the sheriff from the sale, under executory process, of property in which the succession was interested, and in which pleadings he made no other complaint than that the attorney of the succession had taken, and persisted in holding possession of said balance, he has not, for the purposes of the trial in this court, thought proper to take the stand in his own behalf, and he has devoted the greater part of the brief filed by him to an argument in support of the propositions that the succession of ,I^a Dardenne is, judicially, nonexistent, and that the sale under executory process was illegal. As these propositions, if demonstrated, would have no bearing upon the issues to be here •decided, they need not be considered.
We are-nevertheless of the opinion that the facts disclosed by the evidence do not authorize’ the judgment sought to be obtained. Clora Little, the mother and legatee of Ida Dardenne, and the aunt of Bertha Ellis, was intensely interested in the Burdette street property, to the acquisition and improvement of which she had devoted her earnings, and she was under the impression (mistaken, perhaps) that she had rights with respect to that property which would enable her in some way to retain possession and control of it, and make it the home of her old age. She was a woman of mature experience, while her niece, living in the same house with her, 'was a minor, and, naturally enough, it was she who, after the death of her daughter, and upon the intimation that the property in question was threatened with seizure and sale, at the instance of the mortgage creditor, first sought legal advice; who thereafter introduced her niece and exhibited the will of her daughter to the counsel whom she had consulted; who, in behalf of her niece and herself, negotiated the agreement for his employment, to which they both affixed their signatures; and who, when her hopes were disappointed by the sale of the property, and she felt that the counsel so employed was not accomplishing the results that she expected, in behalf of her niece and herself, employed, as their counsel, the defendant now before the court. As matters then stood, it appeared, upon the face of the records, that a balance from the proceeds of the sale under executory process, part of which belonged to the succession of Ida Dardenne and part to Joseph Oryer, had remained in the hands of sheriff; that the sheriff, with the consent of Oryer, had drawn his check for the whole amount to the order of Bertha Ellis, executrix. And the defendant herein was informed that Bertha Ellis, executrix, had indorsed it in blank, and had delivered it to the counsel first employed, and that the counsel first employed was in possession of the proceeds, and persisted in retaining such possession ; all of which was true, save that the money had been placed by the counsel first employed in the custody of a third person, to be produced when called for. We are satisfied that the counsel first employed believed that his -client, the executrix, was an inexperienced and irresponsible person, to whose keeping it would be unsafe to intrust the money in question, and that his motive in thus withholding it was to secure its distribution among those who might be entitled to it; but it does not appear, and is not probable, that he made that explanation to her, and, as the course pursued was unauthorized by law, and in contravention of its express requirements, it should not have been adopted. The law makes the executrix the custodian of the funds of the succession, and requires her to deposit them in bank) to the credit of an account, to be kept in her official name, and it declares that they shall “on no *600 account” be withdrawn by her, until a tableau of distribution shall have been homologated-, or unless ordered by a competent court, under a penalty in the nature of a fine and damages and of dismissal from office. C. C. art. 1150. Finding matters in the condition stated, defendant was entirely within his rights ..when, on October 20th, as counsel for “Bertha Ellis, * * *• testamentary executrix,” etc., he ruled the counsel first employed to show cause why the balance in question should not be turned over to said executrix. The language of the rule was inoffensive and unobjectionable, but the rule was filed in the wrong proceeding and wrong division of the court, and presumably, on the objection of the parties defendant, was dismissed. It should nevertheless have served to call attention to the fact that the funds to which it referred were not where the law required them to he, and it should have provoked prompt action, accompanied by a full explanation. But no action was taken, and, the right which was asserted on behalf of the executrix not having been recognized, the impression was created, in the mind of her counsel, that he was being trifled with. Thereafter he had some further conversations with the counsel first employed, and, according to the testimony of the latter, was assured (on a Friday) that the money would be deposited in the registry of the court on the next day. It was not so deposited, however, and on the following Tuesday defendant filed the rules here complained of, in which he charged that it had been converted by the counsel first employed to his own use. In point of fact, the charge thus made was untrue. The counsel first employed had not converted the money to his own use, and had never conceived any such idea; but the defendant’s clients were ignorant and suspicious people, who were very much dissatisfied with the manner in which their business had been handled, and defendant had also become suspicious. He knew that the money in which his clients were interested had gone into the hands of the counsel first employed, and he supposed that it was still in his possession, whereas it should have been in the bank, on deposit to the credit of the executrix, and he had nothing but the verbal promise of the counsel first employed that it would be produced, which promise was past due and unfulfilled up to the moment that the rules were filed, though the money was deposited in court upon that same day. The money, we think, would have been quite as safe if it had originally been deposited as the law requires, since no bank, with such warning as might have been given, would have paid it out, save upon an order of court. Defendant was employed by Clora Little, for herself and for Bertha Ellis, executrix, after she had abandoned, and, as she considered, had been abandoned by, the counsel first employed by her, and defendant was guilty of no impropriety in accepting the employment. As the last-employed counsel of the executrix, he was guilty of no impropriety in. calling upon the counsel first employed by her to surrender to her the funds of the succession, of which she was the legal custodian ; and when his demand therefor, though made by means of a pleading in a division of the court which had lost its jurisdiction of the funds, was unheeded, it was his right and duty to renew it, in the proper division of the court, in behalf of the executrix, or in behalf of any other client having an interest in the funds. The charge that, in so doing, he was guilty of professional misconduct, for which he should be disbarred, rests, therefore, upon the fact that in the pleadings last filed he alleged that the counsel first employed had converted the funds to his own use. But the counsel referred to, though, as we are satisfied, at once innocent and incapable of the offense thus charged, and though actuated in what he did by the most excellent *602 motives, was not free from fault, and himself created the situation which provoked .the charge, since the funds in question were in his possession, or under his control, when the law required that they should have been in the custody of defendant’s client, the executrix; and he did not place them where they belonged, or offer to do so, when the demand was first made upon him, or at any time up to the moment when the last pleadings were filed. We conclude, then, that the charges that defendant was guilty of attempting to undermine and displace a member of the bar in good standing, and of fomenting litigation, are based upon a misapprehension of the facts; and that, as to the charge that he was guilty of “recklessly and wantonly attacking the character of a member of the bar in good standing,” the evidence shows that, though he was grievously mistaken, there was nevertheless probable cause for his belief in the truth of the allegations therein referred to, and that, though he expressed himself as being indifferent to the effect of those allegations, he was not actuated by malice. It is said that he falsely swore that the succession of Ida Dardenne owed no debts, whereas it was indebted for funeral'charges, expenses of last illness, costs of administration, etc. There is in the record a rule, taken by the counsel first employed, calling upon the executrix to show cause why items, such as expenses of last illness, funeral charges, costs of court, and fees of counsel, should not be paid, but those items do not appear to have been proved, nor is it shown that defendant knew of their existence, and it may be that he had reason to suppose that they would be, or had been, paid, since there is some reference in the testimony to an insurance claim which might have been used in that way. Moreover, it appears to us that defendant’s affidavit, though broad enough to cover such debts as we have mentioned, was really intended to apply to the debts left by the decedent, or due upon the property, and which were paid by the sheriff. It is said that defendant falsely swore that the counsel first employed was without authority to represent Bertha Ellis. But the evidence shows that Bertha Ellis so testified, and, though she subsequently admitted that she had testified untruthfully in denying her signature to the written evidence of such employment, and stated that she had been instructed as to her testimony by the defendant, we are not convinced that she did not tell defendant that she had not employed the first counsel, nor altogether convinced that she may not at the time have believed that she was telling the truth; for it seems evident that her aunt, Clora Little, was the dominating influence in the transaction of the business, and that Bertha Ellis did very much as she was told, and with no clear understanding, at'times, of the significance of her acts. After her denial of her signature (in the district court), she was threatened with prosecution for perjury, and she, no doubt, became very much frightened. She testified in this court that defendant had instructed her as to her testimony, and that Clora Little was present when he did so, but Clora Little testified that no such instructions were given in her presence, and we are of opinion that, of t’he two, the witness last named is the more credible. It is therefore ordered that the demand of the relator be rejected, and this proceeding dismissed.